# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| IRONSHORE INDEMNITY INC.<br>One State Street Plaza<br>New York, NY 10004 | ) ) ) ) | CASE NO.  2:15-cv-3653-PMD |
| Plaintiff, | ) ) | JUDGE |
| v. | ) ) | |
| J. EDWARD BELL, III<br>219 S. Ridge Street<br>Georgetown, SC 29440 | ) ) ) ) | |
| and | ) ) | |
| BELL LEGAL GROUP, LLC<br>c/o J. Edward Bell III, Registered Agent<br>219 S. Ridge Street<br>Georgetown, SC 29440 | ) ) ) ) ) | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| and | ) ) | [**Jury Demand Endorsed Hereon**] |
| DARLINGTON VENEER COMPANY<br>c/o Reginald H. Hubbard, Registered Agent<br>225 4th Street<br>Darlington, SC 29532 | ) ) ) ) ) | |
| and | ) ) | |
| ACE AMERICAN INSURANCE COMPANY<br>c/o Ray Farmer, Director<br>South Carolina Department of Insurance<br>1201 Main Street<br>Suite 1000<br>Columbia, SC 29201 | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

584238_5

Plaintiff Ironshore Indemnity Inc. ("Ironshore") states for its Complaint for Declaratory Judgment against Defendants J. Edward Bell, III, Bell Legal Group, LLC, Darlington Veneer Company ("Darlington"), and ACE American Insurance Company ("ACE"):

## I. PARTIES, JURISDICTION, AND VENUE

1. Ironshore is a corporation organized pursuant to the laws of the state of Minnesota, having its principal place of business in the state of New York, and at all relevant times was engaged in the business of insurance within the state of South Carolina.

2. J. Edward Bell, III is a resident of the state of South Carolina.

3. Bell Legal Group, LLC is a limited liability company organized pursuant to the laws of the state of South Carolina and its members are residents of the state of South Carolina.

4. Darlington is a corporation organized pursuant to the laws of the state of South Carolina, having its principal place of business in the state of South Carolina.

5. ACE is a corporation organized pursuant to the laws of the Commonwealth of Pennsylvania, having its principal place of business in the Commonwealth of Pennsylvania, and at all relevant times was engaged in the business of insurance within the state of South Carolina.

6. The matter in controversy involves parties among whom complete diversity of citizenship exists and exceeds the sum value of $75,000.00, exclusive of interest and costs.

7. The matter in controversy involves a declaration of rights, duties, and obligations under an insurance policy pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.

8. The Court is vested with jurisdiction of this matter pursuant to 28 U.S.C. §§ 1332 and 2201.

9. Venue of this matter is proper pursuant to 28 U.S.C. § 1391.

## II.     FACTS

10. On September 29, 1993, Darlington, represented by Mr. Bell, filed suit against the South Carolina Public Service Authority, a/k/a Santee Cooper ("Santee"), in the Court of Common Pleas for Georgetown County, South Carolina, seeking to recover for inverse condemnation, trespass, and negligence ("Santee Litigation").

11. On November 19, 1993, Santee removed the Santee Litigation to the United States District Court for the District of South Carolina ("District Court"), where it was assigned Case No. 2:93-30770-23.

12. On March 6, 1997, the jury in the Santee Litigation returned a verdict of liability for Darlington on inverse condemnation and trespass.

13. On February 5, 2010, the District Court awarded Darlington $8,214,737.00 for diminution in value and $22,426,688.93 for prejudgment interest, which it calculated at the rate of 8%, compounded annually, running from the date of the taking to February 5, 2010.

14. Ironshore issued Policy No. 000422902, to J. Edward Bell, III, LLC d/b/a Bell Legal Group, effective June 4, 2012 to June 4, 2013 ("Policy").

15. An authentic duplicate of the Policy is attached as Exhibit 1.

16. On February 28, 2013, Darlington filed suit against Bell Legal Group, LLC and J. Edward Bell, III (collectively "Bell") in the Court of Common Pleas for Georgetown County, South Carolina, captioned *Darlington Veneer Co., Inc. v. Bell Legal Group, LLC, et al.*, Case No. 2013CP2200235 ("Bell Litigation").

17. On May 13, 2013, Darlington filed an Amended Complaint in the Bell Litigation, which primarily alleged that Bell had collected an unreasonable fee with respect to his

representation of Darlington in the Santee Litigation and had breached his "Fee Agreement" with Darlington.

18. An authentic duplicate of the Amended Complaint is attached as Exhibit 2.

19. On June 19, 2013, Bell provided written notice of the Bell Litigation to Ironshore.

20. On July 9, 2013, Ironshore reserved all rights under the Policy.

21. An authentic duplicate of Ironshore's July 9, 2013 Reservation of Rights is attached as Exhibit 3.

22. On September 8, 2014, Darlington filed a Motion for Leave to File Second Amended Complaint in the Bell Litigation.

23. An authentic duplicate of the Motion is attached as Exhibit 4.

24. On October 9, 2014, Ironshore supplemented its reservation of rights.

25. An authentic duplicate of Ironshore's October 9, 2014 Supplemental Reservation of Rights is attached as Exhibit 5.

26. On November 12, 2014, Darlington's Motion for Leave to File Second Amended Complaint in the Bell Litigation was granted.

27. The Second Amended Complaint alleges, *inter alia*:

   a.) On June 16, 1993, J. Edward Bell, III sent a letter and proposed Fee Agreement to Darlington, seeking to represent Darlington with respect to its claim of inverse condemnation against the South Carolina Public Service Authority ("Santee Cooper") arising out of flooding of Darlington's real property due to actions of Santee Cooper;

   b.) In seeking to represent Darlington, J. Edward Bell, III wrongfully failed to advise that damages for inverse condemnation included prejudgment interest and attorneys' fees and to explain how J. Edward Bell, III's proposed 40% contingency fee would be calculated;

    c.)    Darlington signed the Fee Agreement attached to the June 16, 1993 letter from J. Edward Bell, III based on material representations and non-disclosures by J. Edward Bell, III;

    d.)    On March 11, 1997, following a jury trial of Darlington's inverse condemnation case against Santee Cooper, in which Darlington was represented by the Bell Group, judgment in favor of Darlington was entered;

    e.)    Pursuant to the ambiguous and misleading Fee Agreement signed by Darlington, the Bell Group improperly calculated its contingency fee based on prejudgment interest and court-ordered attorneys' fees, without first deducting expenses;

    f.)    The Bell Group committed malpractice in the course of representing Darlington during the trial by failing to set the correct date of the improper taking of land by Santee Cooper, thereby negligently reducing the damages awarded; and

    g.)    The Bell Group represented Darlington despite knowing of conflicts of interest.

28.    An authentic duplicate of the Second Amended Complaint is attached as Exhibit 6.

29.    On January 8, 2015 and January 23, 2015, Ironshore supplemented its Reservation of Rights.

30.    Authentic duplicates of Ironshore's January 8, 2015 and January 23, 2015 Supplemental Reservations of Rights are attached as Exhibits 7-8.

31.    An actual justiciable controversy has arisen as to whether the Policy provides coverage to Bell for the Bell Litigation.

32.    On May 4, 2015, Ironshore and Bell unsuccessfully mediated this controversy, in satisfaction of General Condition G. of the Policy.

33.    Ironshore has raised herein the grounds that are ripe and present an actual justiciable controversy. Other grounds for Ironshore's Reservation of Rights as to its duties

under the Policy with respect to the Bell Litigation are not yet ripe for adjudication. As such, an actual justiciable controversy on these grounds does not presently exist. Ironshore therefore continues to reserve rights on such grounds.

34.     Darlington and ACE have an interest in this controversy, such that disposition of this action in their absence may impair or impede their ability to protect such interest.

### III.     COUNT I

35.     Ironshore restates Paragraphs 1-34 of its Complaint.

36.     The Policy provides, in pertinent part:

> **Section I.          Insuring Agreements**
>
> **A.**     The **Insurer** shall pay on behalf of each **Insured** all sums the **Insured** shall become legally obligated to pay as **Damages** as a result of a **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** during the **Policy Period** and arising out of the rendering of or failure to render **Professional Legal Services**.
>
> \*     \*     \*
>
> **Section II.          Definitions**
>
> \*     \*     \*
>
> **C.**     **"Claim"** shall mean a demand received by an **Insured** for money or services, including the service of suit or institution of arbitration proceedings against the **Insured**.
>
> \*     \*     \*
>
> **E.**     **"Damages"** shall mean a monetary judgment or settlement, including any such judgment or settlement for **Personal Injury**, but does not include fines or statutory penalties, sanctions, whether imposed by law or otherwise, any amount awarded in a **Disciplinary Proceeding**, any amount for which the **Insured** is not financially liable or that is without legal recourse to the **Insured** or matters that may be deemed uninsurable under law.

\* \* \*

    **M.** **"Professional Legal Services"** shall mean legal services and activities performed for others as a lawyer, and including pro bono legal services, services as a notary public, arbitrator, mediator, title insurance agent, designated issuing lawyer to a title insurance company, fiduciary, services rendered as a member of a bar association, ethics, peer review, formal accreditation board or similar professional boards or committees, or the publication or presentation of research papers or similar materials by an **Insured** but only if the fees generated from such publication or presentation are not greater than thirty thousand dollars ($30,000). **Professional Legal Services** shall include services as an administrator, conservator, receiver, executor, guardian, or in any similar fiduciary capacity, or trustee, if such services are usual and customary to the practice of law and are in the rendering of professional services to others in an attorney client relationship.

37.    Darlington's allegations that Bell charged an excessive fee for the Santee Cooper Litigation do not arise out of the rendering of or failure to render **Professional Legal Services** as to fall within the Insuring Agreement of the Policy.

38.    Ironshore is entitled to a declaration that the Bell Litigation does not fall, in whole or in part, within the Insuring Agreement of the Policy.

### IV.    COUNT II

39.    Ironshore restates Paragraphs 1-38 of its Complaint.

40.    The Policy provides, in pertinent part:

**Section III.    Exclusions**

The Insurer shall not be liable to make any payments in connection with any **Claim** made against any **Insured**:

\* \* \*

    **M.**    alleging, arising out of, based upon or attributable to the conversion, misappropriation, improper commingling of client

funds, the return of or restitution, or disgorgement of fees, costs and expenses, or other amounts, or arising out of the rendering or failing to render investment advice;

41. The Bell Litigation alleges, arises out of, is based upon or attributable to the misappropriation, the return of or restitution, or disgorgement of fees, costs, and expenses paid to Bell for the Santee Cooper Litigation.

42. Ironshore is entitled to a declaration that it is not liable to make any payments in connection with the Bell Litigation because coverage is precluded, in whole or in part, by Exclusion M. of the Policy.

## V.  COUNT III

43. Ironshore restates Paragraphs 1-37 of its Complaint.

44. The Policy provides, in pertinent part:

**Endorsement # 4**

\*   \*   \*

**SPECIFIC INSURED RETROACTIVE DATE**

In consideration of the premium charged, it is hereby understood and agreed that **Section III**, **Exclusions**, is amended to include the following:

The **Insurer** shall not be liable to make any payments in connection with any **Claim** made against the **Insured** specified below alleging, arising out of, based upon or attributable to **Professional Legal Services** prior to the corresponding **Retroactive Date** stated below and any subsequent **Related Professional Legal Services**.

| **Insured** | **Retroactive Date** |
|---|---|
| J. Edward Bell III | 04/15/1997 |

45. The Policy defines "**Related Professional Legal Services**," in pertinent part, as "**Professional Legal Services** that are the same, related or continuous, or **Professional Legal Services** that arise from a common nucleus of facts."

46. The Bell Litigation alleges, arises out of, is based upon or attributable to **Professional Legal Services** prior to the **Retroactive Date** and subsequent **Related Professional Legal Services**.

47. Ironshore is entitled to a declaration that it is not liable to make any payments in connection with the Bell Litigation because coverage is precluded, in whole or in part, by the Specific Insured Retroactive Date Exclusion of the Policy.

## VI.     COUNT IV

48. Ironshore restates Paragraphs 1-47 of its Complaint.

49. The Policy provides, in pertinent part:

**Section VII.    Costs of Defense and Settlements**

\*     \*     \*

E.  If a **Claim** made against an **Insured** includes both covered and uncovered matters, the **Insured** and the **Insurer** recognize that there must be an allocation between covered and uncovered **Damages** and **Claim Expenses**. The **Insured** and the **Insurer** shall use their best efforts to agree upon a fair and proper allocation between covered and uncovered **Damages** and **Claim Expenses**, taking into account the relative legal and financial exposures and the relative benefits obtained by each **Insured** as a result of the covered and uncovered matters and/or such benefits to an uninsured party using the same measure. If the **Insured** and the **Insurer** are not able to agree regarding the amount of the allocation, the **Insurer** shall pay only those amounts, excess of the applicable Deductible, that the **Insurer** deems to be fair and equitable until a different amount shall be agreed upon or determined pursuant to the provisions of this Policy and the above standards.

50. Ironshore is entitled to a declaration allocating **Damages** and/or **Claim Expenses** for the Bell Litigation between covered and uncovered matters.

## VII.    COUNT V

51. Ironshore restates Paragraphs 1-51 of its Complaint.

584238_5                                                9

52.  The Policy provides, in pertinent part:

**Manuscript: DEFENCE AND SETTELMENT OF CLAIM AMENDATORY**

\*     \*     \*

IT IS AGREED that **Section I, Insuring Agreement B,** is deleted in its entirety and is replaced by

B.  The Insurer shall have the right and duty to defend any Claim first made against the Insured during the Policy Period and reported to the Insurer during the Policy Period and arising out of the rendering of or failure to render Professional Legal Services, including an appeal thereof, seeking Damages to which this insurance applies even if any of the allegations are groundless, false, or fraudulent.

53.  Ironshore does not have a duty to defend Bell in the Bell Litigation because it is not a **Claim** arising out of the rendering of or failure to render **Professional Legal Services,** seeking **Damages** to which the Policy applies.

54.  Ironshore is entitled to a declaration that it is entitled to recoupment from Bell for **Claim Expenses** that it has paid with respect to the Bell Litigation.

WHEREFORE, Ironshore respectfully demands the following relief:

1.  Declaratory judgment that the Bell Litigation does not fall within the Insuring Agreement of the Policy.

2.  Declaratory judgment that Ironshore is not liable to make any payments in connection with the Bell Litigation because coverage is precluded, in whole or in part, by Exclusion M. of the Policy.

3.  Declaratory judgment that Ironshore is not liable to make any payments in connection with the Bell Litigation because coverage is precluded, in whole or in part, by the Specific Insured Retroactive Date Exclusion of the Policy.

4.  Declaratory judgment allocating **Damages** and/or **Claim Expenses** for the Bell Litigation between covered and uncovered matters.

5.  Declaratory judgment that Ironshore is entitled to recoupment from Bell for **Claim Expenses** it has paid with respect to the Bell Litigation.

6. Costs.

7. Reasonable attorney fees.

8. Any other relief that the Court deems equitable and just.

Respectfully submitted,

September 11, 2015

*/s/ Steven G. Janik*
STEVEN G. JANIK (11301)
JANIK L.L.P.
1000 William Hilton Parkway, Suite 103
Hilton Head Island, SC 29928
(843) 715-9311 * (440) 740-3061 (Fax)
Steven.Janik@Janiklaw.com

LOVIC A. BROOKS, III
JANIK L.L.P.
1122 Lady Street, Suite 1025
P.O. Box 136
Columbia, SC 29202
(803) 254-5300 * (803) 254-5353 (Fax)
Lovic.Brooks@Janiklaw.com

*Attorneys for Plaintiff Ironshore Indemnity Inc.*

## JURY DEMAND

A trial by jury is hereby demanded.

*/s/ Steven G. Janik*
STEVEN G. JANIK (11301)
JANIK L.L.P.

*Attorneys for Plaintiff Ironshore Indemnity Inc.*